IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Fred Flores, Jr., | ) |
|                     Plaintiff, | ) Civil Action No.2:11-cv-01278-TMC-BHH |
| v. | ) **REPORT AND RECOMMENDATION** |
| Robert M. Stevenson, III, Warden; Sharonda Sutton, Major; John Barkley, Associate Warden Programs; Valerie Whitaker, Classification Case Worker;and Percy Jones, Administrative Captain, | ) **OF MAGISTRATE JUDGE** |
|                     Defendants. | ) |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Dkt. No. 32) and Defendants' Motion for Summary Judgment. (Dkt. No. 29.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about May 24, 2011. (See Dkt. No. 1.) On October 28, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 29.) By order filed October 28, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 30.) On or about October 31, 2011, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 32.) Plaintiff filed his Response in Opposition to the Defendants' Motion for Summary Judgment on or about December 27, 2011. (See Dkt. No. 42.) Defendants did not file a Response to Plaintiff's

Motion for Summary Judgment. Plaintiff has since filed additional documents. (See Dkt .No. 44; Dkt. No. 45.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at Broad River Correctional Institution ("BRCI"), alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff states that he seeks relief for "denial of due process, cruel and unusual punishment, and violation of freedom of speech (through retaliation." (Dkt. No. 1 at 2 of 9.) Plaintiff alleges that on May 27, 2009, he was "placed on P.H.D. [(pre-hearing detention)] for 'inmate presence in the population would create a threat to the safety, security and/or order of the institution' by Captain Percy Jones." (Id. at 3.) Plaintiff states that he was "not taken before the I.C.C. [(Institutional Classification Committee)] board within the required 7 days," but was taken on June 11, 2009. (Id.) According to Plaintiff, the members of the I.C.C. board that day were Defendant Whitaker, Defendant Sutton, Defendant Jones, and Michael Gollach. (Id.) Plaintiff complains that "[i]n listening to the audio tape of [the] hearing," there was no mention of any charges, no mention of any rules' infractions, and "[n]o incident reports or any complaints as to [Plaintiff] being a threat to Lt. Dock Copeland." (Id.) Plaintiff alleges that he was placed on "security detention" ("S.D.") status even though he did not meet any of the criteria. Id.

Plaintiff complained about his S.D. status to Defendant Stevenson; Plaintiff alleges that Stevenson "proceeded to tell [Plaintiff] the reason [Plaintiff] had been placed on S.D. status because some staff members had brought it to [Stevenson's] attention that they thought [Plaintiff] was going to jump on Lt. D. Copeland." (Id. at 4.) Plaintiff contends this was "pure conjecture on somebody's part." (Id.)

Plaintiff states that he went back before the I.C.C. on September 4, 2009, for the second time, even though he "should have been reviewed every 30 days." (Id.) Plaintiff alleges that the I.C.C. informed him that he was "coming off S.D. status," but "[n]o mention

2

whatsoever was made about downgrading [Plaintiff's] custody level from MI-2 to the more restrictive ME-2." (Id.) Plaintiff contends that he did not meet the criteria for this custody level change. (Id.) Plaintiff alleges that Defendants Stevenson and the I.C.C. Board (Sutton, Whitaker, and Jones) failed to follow procedures with respect to his S.D. status. (Id. at 7.)

Plaintiff alleges "[t]hose 100+ days" that he spent "in SMU on S.D. status amounted to cruel and unusual punishment for a 62 year old man with H.I.V, hypertension, [and] type-2 diabetes." (Id. at 4.) Plaintiff further alleges that about halfway through his stay on S.D. status, he began having problems with his urinary tract, developing a "rash in the urethra," which made urination more frequent and difficult. (Id. at 5.) According to Plaintiff, he signed up for sick call and was seen by Nurse McCullough, who "dismissed it as using the different soap issued in lock-up." (Id.) Plaintiff states,

> My P.S.A. levels before being placed on S.D. were normal. The condition I had to endure during those 100+ days contributed to my body developing prostate cancer. Conditions like the ventilation system that had all kinds of mold growing in the vents and a black-looking mold growing on the ceiling where rain water seeped in. About every other day, someone would flood their cell and you would have filthy water with feces and all kinds of bacteria coming into your cell (or you had to walk through it). Every other day, someone would get gassed. When it entered the ventilation system, everyone got a dose of it. After I got removed from S.D. status, my P.S.A. levels started to climb. Now I am in the process of going through painful and very discomforting radiation treatments.

(Id.)

Plaintiff also asserts that Defendant Barkley "denies [Plaintiff] the opportunity to further [his] vocational education." (Id.) Plaintiff contends that Barkley will not allow Plaintiff to "take the last part of the course on horticulture" and will not allow Plaintiff to work in education where Plaintiff "ha[s] more tutor training than all the other tutors put together." (Id. at 5-6 of 9.) Plaintiff complains that Barkley "will not let [Plaintiff] participate in the hobbycraft program by denying the dorm [Plaintiff is] assigned to a hobbycraft room." (Id. at 6.)

3

Finally, Plaintiff complains that Defendants retaliated against him "for engaging in a [First] Amendment protected activity in that [Plaintiff] was helping a fellow inmate file suit" against the South Carolina Department of Corrections. (Id. at 7.)

In the "Relief" section of his Complaint, Plaintiff states that he would like to spend the remainder of his incarceration at BRCI and that he is seeking $25,000 in damages from each Defendant. (Id. at 9.) In addition, Plaintiff asks for Defendants to be held liable for the cost associated with completing his cancer treatment should he be released prior to the completion of that treatment. (Id.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on October 28, 2011, and Plaintiff filed a Motion for Summary Judgment on October 31, 2011. (See Dkt. No. 29; Dkt. No. 32.)[1] The undersigned will address Plaintiff's claims in turn.

**A. Due Process Claim**

From a review of Plaintiff's Complaint, it appears that Plaintiff seeks to assert a claim for a due process violation as a result of his placement in S.D. status. (See generally Compl.) He complains that he was placed on S.D. status without meeting the criteria, and that the audio tape of the hearing revealed that there was no mention of charges or rules' infractions, and that there was no incident report or complaint as to Plaintiff being a threat to Lt. Copeland. (Id. at 3.) Plaintiff further alleges that he was not taken before the I.C.C. board within the required seven days, but instead was taken before the I.C.C. board after fifteen days on S.D. status. (Id.)

In his Response in Opposition, Plaintiff contends that he was not placed on S.D. for security reasons; Plaintiff states that Defendants stated before an Administrative Law Judge (ALJ) that he "was punished" as a "result of the disciplinary proceeding." (Dkt. No. 42 at 6 of 22.) According to Plaintiff, the Honorable Carolyn C. Matthews' order dismissing the appeal indicates that "as a result of the disciplinary proceeding, the appellant was punished." (Dkt. No. 42-1 at 9 of 10.) Plaintiff states,

---

[1] In his Motion for Summary Judgment (Dkt. No. 32), Plaintiff states that on July 20, 2011, he mailed discovery to Defendants' attorney, but that Defendants "have made no effort to provide the Plaintiff with the documents and audio tapes requested." (Dkt. No. 32 at 1-2 of 4.) Plaintiff requests "a subpoena duces tecum to the Defendants to produce the requested materials" should the Court deny his Motion for Summary Judgment. (Id. at 2.)
After filing his Motion for Summary Judgment (Dkt. No. 32), Plaintiff filed a Motion to Compel. (See Dkt. No. 36.) In the Motion to Compel, Plaintiff contended that he served discovery on July 20, 2011, but that Defendants failed to respond. (Id. at 1.) The undersigned denied Plaintiff's Motion to Compel on December 9, 2011. (See Dkt. No. 40.)
Plaintiff's Motion for Summary Judgment is in substance a discovery motion that has already been ruled upon. (See Dkt. No. 32; Dkt. No. 40.) The undersigned therefore recommends denying Plaintiff's Motion for Summary Judgment (Dkt. No. 32).

5

> In all of the Defendants' affidavits, they stated that I was placed on S.D. for security concerns/reasons, not because of a disciplinary charge. How can you get punished in a disciplinary proceeding, if you don't have a charge?

(Id.)

Plaintiff filed the ALJ's Order Dismissing Appeal. See Flores v. S.C. Dep't of Corrs., No. 09-ALJ-04-1150-AP, Grievance No. BRCI 654-09; see also Dkt. No. 42-2 at 47 of 51. In that Order, the ALJ noted that Flores was challenging "the fact that he was placed in Security Detent[ion]," commonly known as "lock-up." (Dkt. No. 42-2 at 47 of 51.) The Order dismissing the appeal stated, *inter alia*,

> As a result of the disciplinary proceeding, the Appellant was punished. This punishment is not a loss of sentence-related credits. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Al-Shabazz, 338 S.C. at 369-70, 527 S.E.2d at 750. Nor do the restrictions of the Appellant result in the kind of "atypical, significant hardship . . . in relation to the ordinary incidents of prison life" which would implicate a state-created liberty interest pursuant to Sandin v. Conner, 515 U.S. 472, 484 (1995). See Sullivan, 355 S.C. 437, 586 S.E.2d at 128 (quoting Sandin).
> In 2007, the South Carolina Supreme Court expanded the scope of the state-created liberty interest in Furtick v. South Carolina Dept. of Corrections, 374 S.C. 334, 649 S.E.2d 355 (2007). In Furtick, the court held that the inmate's loss of good-time credits, which he was unable to earn due to reprimand for a rule infraction, implicated a state-created liberty interest that was protected by due process, and thus the Administrative Law Court (ALC) had subject matter jurisdiction over inmate's appeal from the Department of Corrections' denial of his grievance challenging the reprimand. However, the legislature removed this type of appeal from the jurisdiction of the ALC by Act No. 334 of 2008 which states that:
>> An administrative law judge shall not hear an appeal from an inmate in the custody of the Department of Corrections involving the loss of the opportunity to earn sentence related credits pursuant to Sections 24-13-210(A) or Section 24-13-130(A). S.C. Code 1-23-600(D).
>
> Because the Department's action in this matter does not implicate a state-created liberty interest, I find that this grievance is not entitled to review by the ALC.

(Dkt. No. 42-2 at 47-48 of 51.)

Defendants move for summary judgment on Plaintiff's due process claim, stating that Plaintiff has not, as a matter of law, alleged facts sufficient to establish that he was denied due process. (Dkt. No. 29-1 at 4 of 15.)

There appears to be a dispute as to why Plaintiff was placed on S.D. status. Defendants present evidence that he was placed on that status because of a perceived threat to Lt. Copeland. (See, e.g., Sutton Aff. ¶¶ 2-6.) Plaintiff contends he was placed there as punishment and/or retaliation. Accepting the facts presented in the light most favorable to the Plaintiff, however, his due process claim fails. In order to prevail on a due process claim, inmates "must first demonstrate that they were deprived of life, liberty, or property by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Prisoners, however, have no right under the Constitution to be held in a particular custody status. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)); O'Bar v. Pinion, 953 F.2d 74, 83 (4th Cir. 1991). In order to show a constitutional violation with respect to a custody classification, the conditions must exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

Plaintiff complains of mold, rainwater seeping in, and inmates flooding their cells during the approximately 100 days he spent on S.D. status. Plaintiff contends that S.D. status "was a dramatic departure from the basic conditions of Plaintiff's sentence." (Dkt. No. 42 at 4 of 22.) The Fourth Circuit rejected a strikingly similar claim in Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997). In Beverati, the inmates alleged that their cells were infested with vermin and smeared with urine, that no outside recreation was permitted, that no religious services were available, and that food was served in considerably smaller portions. Beverati, 120 F.3d at 504. The Fourth Circuit held that these conditions of confinement in

7

segregation "were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." Id.

Like in Beverati, the conditions in the case *sub judice* were not so atypical that exposure to them for 100 days imposed a significant hardship in relation to the ordinary incidents of prison life. Accordingly, Plaintiff's due process claim fails. See Beverati, 120 F.3d at 504; Fair v. Ozmint, C.A. No. 6:10-1268-RMG-KFM, 2011 WL 1642383, at *3-5 (D.S.C. Apr. 15, 2011), adopted at 2011 WL 1658761 (D.S.C. May 2, 2011) (the plaintiff's placement in SMU did not violate his due process rights because there was no evidence that the conditions exceeded the sentence imposed or created an atypical or significant hardship in violation of a protected liberty interest); Edwards v. Ogunsile, C/A No. 0:09-3319-TLW-PJG, 2011 WL 779884, at *4 (D.S.C. Jan. 24, 2011), adopted at 2011 WL 780540 (D.S.C. Feb. 28, 2011) ("[T]o the extent Edwards seeks such relief in connection with the time he spent in security detention, which is apparently a term of segregation used for inmates deemed to present a security threat to the prison, he has no interest protected by the Due Process Clause."); Pelzer v. Ozmint, C.A. No. 2:09-2274-MBS, 2010 WL 2010907, at *1-2 (D.S.C. May 19, 2010) (rejecting the plaintiff's argument that his right to due process was violated because he was placed in security detention instead of the general population). The undersigned therefore recommends granting summary judgment to Defendants on Plaintiff's due process claim.[2]

---

[2]Plaintiff also complains that he was not taken before the I.C.C. board within the required 7 days and that his S.D. status was not reviewed every thirty days. It is well settled, however, that failure to follow prison policy is not, in and of itself, a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

**B. Eighth Amendment Claims**

In his Complaint, Plaintiff alleges that the "100+ days" he spent "in SMU on S.D. status amounted to cruel and unusual punishment for a 62 year old man with H.I.V, hypertension, [and] type-2 diabetes." (Compl. at 4.) In his Response in Opposition, Plaintiff states that "SMU is designed to starve the human mind of stimuli" and that Defendants "isolated the Plaintiff and stripped him of all sense of time in a world of sensory deprivation." (Dkt. No. 42 at 14 of 22.) Plaintiff also complains therein of being handcuffed behind his back every time he is let out of his cell, being locked in "what amounts to a large cage like an animal" in the recreation area, and being placed in leg irons and belly chains to "lead the Plaintiff like a dog wherever he had to go" outside of the SMU. (Id. at 15.) Plaintiff states that he did not have access to any lotion to put on his feet, and was deprived of the following: visitation privileges, personal property such as magazines and television, attending religious services, and hygiene products. (Id. at 15-16.)

Plaintiff contends that "about halfway through his stay on S.D. status," he developed a "rash in the urethra," and that his exposure to mold and filthy conditions caused him to develop cancer. (Compl. at 5.) Plaintiff states that his medical encounters, which show his weight dropping in 2009 from 191 to 163, show that "there was something definitely wrong." (Dkt. No. 42 at 16 of 22.) Plaintiff states, "Weight loss without dieting can either be attributed to lack of food, which would fall under the Eighth Amendment; or the cancer was already starting to play havoc with Plaintiff's health." (Id. at 16-17.) According to Plaintiff, his PSA level was 3.7 before being placed on S.D., but was up to 5.4 about six months after being released from S.D. (Id. at 19.)

Defendants contend that they are entitled to summary judgment on this claim because Plaintiff "has not alleged facts sufficient to establish that he was subjected to cruel

9

and unusual punishment in violation of his Eighth Amendment rights." (Dkt. No. 29-1 at 7 of 15.)

### 1. Conditions of Confinement

As a general matter, the Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), overruled on other grounds by Bell v. Wolfish, 441 U.S. 520 (1979). Even so, the Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981); see also Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (citing Rhodes, 452 U.S. at 347; Wilson v. Seiter, 501 U.S. 294 (1991)); Shakka, 71 F.3d at 166. To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference–that is, the prisoner must show the officials acted with more than mere negligence but less then malice. See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996); see also Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme

deprivation of his rights. See Williams v. Branker, No. 11-6329, 2012 WL 165035, at *4 (4th Cir. Jan. 20, 2012) (unpublished).

The conditions of confinement of which Plaintiff complains do not rise to the level of an Eighth Amendment violation. In In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464 (4th Cir. 1999), the prisoners alleged, *inter alia*, that they were "confined to their cells for twenty-three hours per day without radio or television, that they receive[d] only five hours of exercise per week, and that they [could] not participate in prison work, school, or study programs." Five Percenters, 174 F.3d at 471. The Fourth Circuit rejected their Eighth Amendment claim, stating, "These conditions are indeed restrictive, but the restrictive nature of high-security incarceration alone does not constitute cruel and unusual punishment." Id. Similarly, Plaintiff's complaints related to the conditions of confinement on S.D. status do not rise to the level of cruel and unusual punishment. See id. at 472 ("[T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable."); Burrell v. Sowers, C.A. No. PJM-09-1038, 2012 WL 628506, at *9-11 (D. Md. Feb. 24, 2012) (rejecting claim of cruel and unusual punishment alleged as a result of confinement in the SMU); Thompson v. Brown, C.A. No. 3:11-318-TMC-JRM, 2011 WL 6012592, at *1-2 (D.S.C. Nov. 8, 2011), adopted at 2011 WL 6012550 (D.S.C. Dec. 2, 2011) (rejecting conditions of confinement claim where the plaintiff claimed "his mattress and blanket were confiscated for six days, he was not allowed to have any toilet tissue for six days, his clothes were taken away from him for six days, his cell was cold, he had no running water in his cell, and he was forced to sleep on a steel cot for six days"); Wilson v. Ozmint, C.A. No. 3:10-cv-2887-RMG, 2011 WL 1336391, at *1 (D.S.C. Apr. 7, 2011) (rejecting claim for violation of Eighth Amendment based on placement in disciplinary confinement for forty-five days). The undersigned thus recommends granting summary judgment to Defendants on this claim.

### 2. Medical Claim

Plaintiff also alleged that he developed a rash in his urinary tract–and ultimately prostate cancer–as a result of being placed in SMU. Plaintiff contends that his weight loss in 2009–which allegedly occurred without Plaintiff dieting–shows that "there was something definitely wrong." (Dkt. No. 42 at 16 of 22.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

To the extent Plaintiff seeks to assert a claim for deliberate indifference, that claim fails. Plaintiff, by his own allegations, indicates that he has received treatment for his prostate cancer and that his condition has improved. (See Dkt. No. 42 at 19 of 22.) Plaintiff appears to complain that Defendants simply did not react quickly enough to his medical needs, but such an allegation of negligence is insufficient to state a claim under § 1983. See Estelle, 429 U.S. at 105-06; Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v.

Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). The undersigned therefore recommends granting summary judgment to Defendants on this claim.

**C. Retaliation**[3]

While Plaintiff clarifies this claim in his Response in Opposition, it is not clear from a reading of Plaintiff's Complaint exactly how Defendants are alleged to have retaliated against him. (See generally Compl.) He does state therein that Defendants retaliated against him "for engaging in a [First] Amendment protected activity in that [Plaintiff] was helping a fellow inmate file suit" against the South Carolina Department of Corrections. (Id. at 7.)

Plaintiff's allegations for this claim change a bit in his Response in Opposition. (See Dkt. No. 42.) Plaintiff contends that he was retaliated against for "engaging in . . . protected conduct" of filing grievances. (See Dkt. No. 42 at 2-3 of 22.) Plaintiff explains that he was the "Inmate Representative Committee Person (I.R.C)" for his unit, and that "[p]art of the I.R.C.'s job is to be a liaison between the inmate population and the administration." (Id. at 8.) Plaintiff states that he was "fielding the complaints and forwarding [them] to the

---

[3]In his Response in Opposition, Plaintiff claims that Defendant Barkley has retaliated against him by refusing to allow Plaintiff "to enroll in any educational programs that he is qualified for." (Id. at 20.) Plaintiff alleges that Barkley "allows inmates to be enrolled that do not meet the criteria, but he denies the Plaintiff, who meets the criteria, the opportunity." (Id.) Plaintiff further complains that Barkley "refused to put Plaintiff on ballot slips for the I.R.C. election in June of 2011." (Id.)
Plaintiff fails to show that he has a constitutional right to such programs. See Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988) (state has no constitutional obligation to provide basic educational or vocational training programs to prisoners). Moreover, while Plaintiff complains that he was not allowed to finish his course in horticulture, the record belies this assertion. (See Barkley Aff. ¶¶ 3-4.) Finally, turning to Plaintiff's claim for lack of a hobbycraft room, that claim is now moot. (Id. ¶ 5.)

13

appropriate officials" and that "[a] majority of the inmates [were] illiterate and asked the Plaintiff to write the grievance for them." (Id.) According to Plaintiff,

> The whole ruse of the conjectured threat to Lieutenant Dock Copeland was just another carefully conspired tactic to intimidate the inmate population not to file grievances or complaints. To further add weight to this ruse, the Defendants placed the Plaintiff on S.D., sending a loud and clear message. You file a grievance or sign statements to aid in a grievance, we will lock you up.

(Id. at 8-9 of 22.)

However, Plaintiff also appears to claim that retaliatory actions against him began after he gave a statement related to the altercation between Inmate Calvin Harris and Lt. Copeland. (Id. at 13 of 22.) Plaintiff states that the "retaliatory actions by the Defendants did not begin until after the Plaintiff signed a statement . . . addressed to Defendant Robert Stevenson concerning an alleged assault on an inmate by a dorm lieutenant." (Id.)[4]

Defendants moved for summary judgment on this claim contending, *inter alia*, that Plaintiff's "claim is based on the conclusory assertion that he was retaliated against, which is insufficient to state a claim." (Dkt. No. 29-1 at 11 of 15.)    In order to prove a First Amendment § 1983 retaliation claim, a plaintiff must demonstrate:

(1) "that his or her speech was protected";

(2) "that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and

(3) "that a causal relationship exists between [his] speech and the defendant's retaliatory action."

Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000).

Several circuits have held that prison officials may not retaliate against a prisoner for filing grievances. See Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010) (noting that a prisoner

---

[4]Plaintiff filed a copy of the signed statement to which he is referring. See Dkt. No. 42-2 at 22-26 of 51.)

14

has an "undisputed First Amendment right to file grievances against prison officials on his own behalf"); Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); see also Gullett v. Wilt, 869 F.2d 593, at *2 (4th Cir. 1989) (unpublished table decision) (noting that First Amendment rights "are implicated by [the plaintiff's] claim that he is being transferred because prison officials are retaliating for [his] numerous institutional grievances").

In the case *sub judice*, however, Plaintiff alleges he was retaliated against for assisting other inmates with their grievances, not for filing his own grievances. As the Sixth Circuit stated in Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999),

> [A]n inmate does not have an independent right to help other prisoners with their legal claims. Rather, a "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right to access the courts . . . .

Thaddeus-X, 175 F.3d at 395; see also Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001); Tighe v. Wall, 100 F.3d 41, 43 (5th Cir. 1996) (refusing to find that "jailhouse lawyers" have a protected liberty interest in providing assistance to other inmates); Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990) ("[The plaintiff] does not have a protected interest in providing legal representation to other inmates."). It is not clear which inmates Plaintiff was assisting, or whether Plaintiff's assistance was necessary to vindicate their right of access to the courts. Moreover, a prisoner plaintiff may not bring suit on behalf of other prisoners. See Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir.1975) (a *pro se* prisoner cannot be an advocate for others in a class action); cf. Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir.1981) (a prisoner cannot act as a "knight-errant" for other prisoners). The

15

undersigned therefore recommends granting summary judgment to Defendants on the claim of retaliation.

**D. Access to Court**

In his Response in Opposition, Plaintiff contends that the Defendants "further violated [his] First Amendment right of access to courts, when placing him on S.D. impeded his access to the law library in preparing his grievance and appeals." (Dkt. No. 42 at 11 of 22.) Plaintiff contends that on Friday, August 28, 2009, he received two Step 1 Grievance responses with a response due date of Monday, August 31, 2009. (Id.) Plaintiff states, "There is no law library services on the weekends. This interfered with the Plaintiff's ability to present his grievances." (Id.)

Plaintiff also contends that "Defendants violated [his] . . . First Amendment right by not providing him with grievance forms that he requested while in SMU on S.D." (Id. at 12.) Plaintiff states that he filed one handwritten grievance, using the grievance format, but that it was never processed or returned to him. (Id. at 12-13.) Plaintiff further alleges that he asked for grievance forms on several occasions, and that "[e]very once in a while" he would receive the requested forms, but he was often "told that he would have to see the grievance lady to get those forms." (Id. at 13.) Plaintiff states, "How was the Plaintiff to file complaints about the conditions in SMU, when he was not provided with the so-called 'appropriate' forms?" (Id.)

Although Plaintiff raised this claim for the first time in his Response in Opposition to Defendants' Motion for Summary Judgment, the undersigned will briefly address this claim. Plaintiff was on S.D. status from approximately May 27, 2009, to September 4, 2009. (See Dkt. No. 42-1.) While Plaintiff contends that he did not get a response for a grievance filed on June 5, 2009, he was able to file a grievance that was processed–all the way through to the Administrative Law Court–shortly thereafter; this grievance concerned his being placed

16

on S.D. status. (See Dkt. No. 42-1 at 4 of 10.) In fact, Plaintiff's own Affidavit indicates he was able to file numerous grievances or Requests to Staff Member while he was on S.D. status and that, for the most part, he received responses. (See generally Dkt. No. 42-1.) Although Plaintiff did not care for Warden Stevenson's responses, the Warden responded to Plaintiff. (See id.; Dkt. No. 42-1 at 6 of 10.) The same is true for Ann Hallman and the Office of General Counsel. (See id. at 5 of 10.)

While the record reveals that this claim is unfounded, the Fourth Circuit has held that "the Constitution creates no entitlement to grievance procedures or access to any such procedures voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). And as noted above, even if Defendants failed to comply with SCDC policies in responding to those grievances, such actions do not state an actionable § 1983 claim. See United States v. Caceres, 440 U.S. 741 (1978); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992). The undersigned therefore recommends granting summary judgment to Defendants on this claim.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 29) be GRANTED. It is further RECOMMENDED that Plaintiff's Motion for Summary Judgment (Dkt. No. 32) be DENIED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

May 11, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).